**KAZEROUNI LAW GROUP, APC**
Gor Antonyan, Esq. (354718)
gor@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Cameron Smith

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMERON SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>E MORTGAGE CAPITAL, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227(C),** *ET SEQ.*<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# INTRODUCTION

1. Plaintiff CAMERON SMITH ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of E MORTGAGE CAPITAL, INC. ("E Mortgage" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited phone calls and text messages to Plaintiff and the putative class on their respective cellular phone numbers which are registered with the National Do-Not Call Registry, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks relief for all persons injured by Defendant's unlawful conduct in the form of statutory damages and injunctive relief.

2. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. Defendant sent unsolicited text messages and phone calls to Plaintiff's cellular telephone on multiple occasions, which was registered with the National Do-Not Call Registry.

5. Defendant has violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) by bombarding consumers' mobile phones registered with the National Do-Not Call Registry with non-emergency advertising and marketing text messages without prior express written consent.

6. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

7. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited voice phone calls and text

messages to numbers on the National Do-Not Call Registry as well as an award of statutory damages to the members of the Class (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9. The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in the County of Ventura, State of California as not only does Defendant regularly conduct business throughout the State of California, but Plaintiff resides within the State of California, County of Ventura.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of Ventura. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

12. Defendant is a limited liability company formed under the laws of California with its principal place of business in Irvine, California. Defendant is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

13. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Ventura, and within this judicial district.

14. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## **TCPA BACKGROUND**

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

18. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on March 19, 2025: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

- 4 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

19. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

20. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

21. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

22. As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do-Not Call Registry.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

23. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

24. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

25. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

26. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

27. Defendant is a mortgage lending company operating within the state of California, offering residential mortgage loan services, including loan origination and refinancing options for homeowners.

28. In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly sent (and continues to send) unsolicited and automated telemarketing text messages and voice calls to persons who have registered their cellular telephone number on the National Do-Not Call Registry.

29. Through this conduct, Defendant has invaded the privacy of Plaintiff and the members of the Class.

30. At all times relevant, Plaintiff was a resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

31. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

32. At all times relevant Defendant conducted business in the State of California and in the County of Ventura, within this judicial district.

33. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in "0811" ("Cell Phone").

34. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

35. Plaintiff's Cell Phone is assigned to him as his personal cellular telephone and Plaintiff uses his Cell Phone primarily for calls with his friends and family and other personal matters.

36. Plaintiff's Cell Phone was added to the National Do-Not-Call Registry on or about January 14, 2006.

37. Defendant sent multiple text messages and voice calls to Plaintiff on his cellular telephone,[3] beginning on February 28, 2025.

---

[3] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on March 19, 2025: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

- 8 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

38. On or about February 28, 2025, at approximately 9:25 A.M., Defendant sent one (1) automated text message to Plaintiff's Cell from Defendant's telephone number (949) 666-2870, which contained an image with a mortgage quote and said:

> "Hey Cameron, I just reviewed your info and put together a personalized mortgage quote based on today's best pricing. Looks like you have some great options! Which one fits your goals? Tony Cox NMLS #2614078 Executive Loan Officer E Mortgage Capital Reply OUT to be removed"

39. At the time these telephone solicitations were made, Tony Cox was an employee of, or authorized agent for, Defendant.

40. On the same day, just about fifteen minutes later, at approximately 9:40 AM, Defendant called Plaintiff on his cellular telephone from Defendant's phone number (949) 666-2870.

41. At that point, Plaintiff responded to the first text message stating that he did not give consent to be called or texted, and his phone number is registered on the National Do Not Call Registry.

42. On or about March 3, 2025, at approximately 11:16 A.M., Defendant sent another automated text message to Plaintiff's Cell from Defendant's telephone number (949) 666-2870 which said:

> "Any questions on the quote? Once I get an application I can get you a locked Loan Estimate within 24 hours. Do you want me to text or email you my application link?"

43. On or about March 4, 2025, at approximately 12:30 P.M., Defendant sent another automated text message to Plaintiff's Cell from Defendant's telephone

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

number (949) 666-2870 which said:

> "Didn't get an application from you yesterday. Is there any questions that I can answer for you or any info on the quote that needs to be updated?"

44. On or about March 6, 2025, at approximately 10:45 A.M., Defendant sent another automated text message to Plaintiff's Cell from Defendant's telephone number (949) 666-2870 which said:

> "We offer a Client for Life program as well-this means that if you do your transaction with us now, on all future refinances we cover all normal closing costs. This can save you thousands of dollars in the future, as well as getting the lowest rates available on the market today!"

45. On or about March 10, 2025, at approximately 12:03 P.M., Defendant sent another automated text message to Plaintiff's Cell from Defendant's telephone number (949) 666-2870 which said:

> "Rates have made a dip in your favor-let's jump on a quick call today to discuss options. Are you free in about half hour, or would later today be better?"

46. At that point, Plaintiff replied "STOP" so that the Defendant ceases calling and sending marketing text messages.

47. However, on or about March 14, 2025, at approximately 1:50 PM, Defendant once again called Plaintiff on his cellular telephone from Defendant's

phone number (949) 541-4650.

48. The telephone numbers (949) 666-2870 and (949) 541-4650 are both phone numbers which are owned, assigned to, and operated by, Defendant.

49. Both the text messages and voice calls received by Plaintiff constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

50. Plaintiff received at least seven telephone solicitations from Defendant within a 12-month period.

51. Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to message it.

52. Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

53. Plaintiff did not have a personal relationship with Defendant at any point in time.

54. Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

55. Defendant sent at minimum one (1) unsolicited text message and one (1) unsolicited voice call to Plaintiff to his Cell Phone which was registered with the National Do-Not Call Registry, for at least 31 days prior to the unsolicited text message and call, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

56. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

57. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. §

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

227(c)(5), including the internal Do-Not Call provision in 47 C.F.R. § 64.1200(d).

58. Defendant did not place the text messages or voice calls for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## ARTICLE III STANDING

59. Defendant sent multiple text message and voice calls to Plaintiff's personal cellular telephone which was registered on the National Do-Not-Call Registry. Such unwanted solicitations from Defendant are a nuisance, an invasion of privacy, and wasted Plaintiff's time and enjoyment in use of his personal cellular telephone. All three of these injuries are concrete and *de facto*.

60. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening and reading each text message, and picking up each phone call.

61. All of these injuries are particularized and specific to Plaintiff and will be the same or substantially similar injuries suffered by each member of the putative class.

62. The above telephone solicitations were directly and explicitly linked to Defendant. As a matter of fact, Defendant's first text message identified the Defendant as "E Mortgage."

63. These text messages and voice calls are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

64. Plaintiff's Request for Relief includes a request for damages for each text message and telephone call made by Defendant to cellular numbers on the National Do-Not Call Registry, as authorized by statute in 47 U.S.C. § 227, *et seq*. The statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

//
//

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following class, of which Plaintiff is a member, which is defined is follows:

> **National Do-Not Call Class**:
> All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 30 days, (2) who received more than one call or text message (3) made or sent by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

66. Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

67. Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

68. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the National Do-Not-Call Registry. Plaintiff and the Class members were damaged thereby.

69. <u>Numerosity</u>: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

70. The exact number of the members of the class is unknown to Plaintiff at this time and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted and called thousands of class

members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

71. <u>Ascertainability</u>: The members of the class are ascertainable because the class are defined by reference to objective criteria.

72. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

73. <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of either Class.

74. Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving unwanted text messages and calls to his cellular telephone, despite his phone number having been registered on the National Do-Not Call Registry. Thus, his injuries are typical to Class Members.

75. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedures on the part of Defendant.

76. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

77. <u>Adequacy</u>: Plaintiff is qualified to and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

78. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

79. Plaintiff will vigorously pursue the claims of the members of the class.

80. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

81. Plaintiff's counsel will vigorously pursue this matter.

82. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

83. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

84. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

85. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a. What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages and voice calls;

    b. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message and/or voice call to the members of the Class whose telephone numbers were on the

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

National Do-Not-Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

c. Whether Defendant obtained prior express written consent to send the text messages and voice calls to Plaintiff or the Class members' telephones;

d. Whether Defendant's conduct violated the TCPA, and availability of statutory penalties;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

86. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.
- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their

claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

87. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

88. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

89. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

90. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

91. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**REGARDING THE NATIONAL DO-NOT CALL REGISTRY**

**47 C.F.R. § 64.1200(C), 47 U.S.C. § 227(C)(5)**

92. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

93. Plaintiff and members of the National DNC Class received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

94. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

95. Defendant sent unsolicited and unauthorized text messages and/or phone calls to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

96. Defendant knew that it did not have prior express written consent to send these text messages and/or phone calls and knew or should have known that it was sending text messages or making calls to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

97. Defendant willfully or knowingly allowed text messages and/or phone calls to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages and calls.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

98. Defendant's text messages caused Plaintiff and members of the National DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

99. Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(c)(5) of the TCPA.

100. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

101. Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

102. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

- An order certifying this matter as a class action with Plaintiff as Class Representative and designating Plaintiff's counsel as Class Counsel.

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);
- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's knowing or willful violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(C);
- Costs of suit;
- An award of attorneys' fees, pursuant to, *inter alia*, the common fund doctrine;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: March 21, 2025                                Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *Gor Antonyan*
Gor Antonyan, Esq.
gor@kazlg.com
*Attorneys for Plaintiff*